## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| ____ | : | Civil Action No. 18-9446 (FLW) |
| NICOLE FRIEDMAN, | : | |
| | : | **OPINION** |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| NANCY A. BERRYHILL, | : | |
| Acting Commissioner of Social Security, | : | |
| | : | |
| Defendant. | : | |
| _____ | : | |

**WOLFSON, United States District Judge**:

Nicole Friedman ("Ms. Friedman" or "Plaintiff"), appeals from the final decision of the Acting Commissioner of Social Security, Nancy A. Berryhill ("Defendant") denying Plaintiff disability benefits under Title II of the Social Security Act (the "Act"). After reviewing the Administrative Record, the Court finds that the Administrative Law Judge's ("ALJ") assessment of Plaintiff's mental impairments is not based on substantial evidence. Accordingly, the matter is remanded on this limited basis.

### A.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff was born on February 14, 1996, and she was 13 years old on the alleged disability onset date of January 1, 2010. Administrative Record 58, 64 (hereinafter "A.R."). Plaintiff has a high school education. A.R. 31.

On January 29, 2014, Plaintiff applied for social security disability insurance benefits, alleging disability beginning on January 1, 2010. A.R. 58. Plaintiff's claims were denied on April 23, 2014, A.R. 77-81, and again upon reconsideration on April 9, 2015. A.R. 85-89.  On April 20, 2015, Plaintiff requested a hearing, A.R. 90, which was held on March 30, 2017, before ALJ

Dennis O'Leary. A.R. 26-46. The ALJ determined that Plaintiff was not disabled and denied her claims for disability insurance benefits. A.R. 12-21. Plaintiff requested review by the Appeals Council, which was denied on March 19, 2018. A.R. 1-3. On May 18, 2018, Plaintiff filed the instant appeal.

### A. Review of the Medical Evidence

#### a. Dr. Feng and Dr. Chen

From 2010 through 2013, Shufang Feng, M.D. ("Dr. Feng") and Sydney Chen, M.D. ("Dr. Chen") treated Plaintiff primarily for non-musculoskeletal complaints. More specifically, over the course of this three-year period, Plaintiff's reported symptoms included fever, ear pain, headache, stomach pain, cough, nasal/sinus congestion, cold sores, skin rashes, asthma, swelling underneath her chin, and difficulty sleeping. A.R. 275-295. In May of 2013, more than eight months after her prior visit, Plaintiff was provided with a medication refill for an upcoming trip to Florida. A.R. 291. In 2014, during follow up visits with Dr. Feng, Plaintiff's reported symptoms continued to include nasal congestion, cough, sore throat, fever, swollen glands, headache, and ear pain, in addition to pleuritic chest and acute thoracic back pain. A.R. 261, 264, 266, 269, 271, 296, 299. In 2016, upon resuming her treatment with Dr. Feng, Plaintiff complained of cough, sore throat, and sinusitis. A.R. 500-03, 505-06. She was also provided with a medication refill. A.R. 500.

With the exception of upper thoracic spine and chest tenderness on two separate occasions in 2014, A.R. 297, 300, Plaintiff's physical examinations were generally unremarkable and confined to non-musculoskeletal ailments, including, among other things, occasional wheezing, nasal congestion, fever, and skin rash. A.R. 275-300, 500-04. Moreover, during the course of her treatment with Dr. Feng, Plaintiff did not exhibit any psychological abnormalities and she appeared alert with a normal mental status. A.R. 262, 265, 267, 270, 272, 288, 292, 295, 297, 300, 503.

### b. Dr. Allegra

From 2010 through 2017, Edward Allegra, II, M.D., ("Dr. Allegra") diagnosed and treated Plaintiff for juvenile rheumatoid arthritis ("JRA"). During periodic appointments every two to four months, Plaintiff reported mild to severe chronic pain, swelling, and/or stiffness in various areas of her body, including her neck, lower back, hip, knees, elbows, wrists, hands, fingers, shoulders, ankles, feet, and toes. A.R. 327, 330, 333, 335, 337, 339, 341, 343, 345, 347, 349, 351, 353, 355, 357, 359, 361, 363, 365, 367, 369, 371, 374, 376, 379, 381, 383. According to Plaintiff, her symptoms would usually occur between one to two hours in the morning, and, as a result, she would sometimes have difficulty walking, dressing, and getting in and out of her bed. A.R. 327, 330, 379, 381, 383. In addition, Plaintiff complained of non-musculoskeletal abnormalities. These constituted fever, fatigue, and weakness, and, on various occasions, Plaintiff stated that she felt anxious, depressed, agitated, and/or worried excessively. A.R. 337, 339, 341, 343, 345, 347, 349, 351, 353, 355, 357, 361, 363, 365, 367, 369, 372, 374, 376, 379, 381, 384.

During appointments with Dr. Allegra, Plaintiff appeared well developed, well nourished, and well groomed, A.R. 327, 330, 333, 339, and her physical examinations revealed the following medical conditions: tenderness, crepitus (cracking or popping sounds in the joints), synovitis (inflammation), and effusion (fluid). A.R. 335-83. More specifically, notwithstanding a small number of exceptions, Plaintiff exhibited tenderness in her wrists, knees, and lumbosacral, cervical, and trapezius regions, while her crepitus, synovitis, and effusion were similarly confined to certain specific areas, such as her wrists, fingers, and knees.[1] A.R. 327, 330, 333, 335, 337, 339, 341, 343, 345, 347, 349, 351, 353, 355, 357, 359, 361, 363, 365, 367, 369, 371, 374, 376, 379,

---

[1] For purposes of completeness, the Court notes that, on only one occasion, Plaintiff underwent a physical examination which revealed synovitis and a small effusion in her right ankle. A.R. 337, 343.

381, 383. Moreover, on an infrequent basis, Plaintiff's physical examinations demonstrated a positive jump sign and a reduced range of motion in her lumbosacral region, and, on only one occasion, Plaintiff's left straight leg raise tested positive at 30 degrees. A.R. 345. As a result of Plaintiff's examinations, Dr. Allegra rendered various medical diagnoses, including monoarticular and polyarticular JRA, fibromyalgia, and osteoarthrosis in the left leg and knee. A.R. 328, 331, 333-34, 336, 337-38, 339, 342-43, 345, 348-49, 351, 354-56, 357, 359, 361, 363, 365, 367, 370, 372, 375, 377, 379, 38-82, 384.

On March 9, 2017, Dr. Allegra completed a two-page form which she received from Plaintiff's counsel, titled "Seelig law Offices, LLC Treating Doctor's Patient Functional Assessment To Do Sedentary Work." A.R. 325. Dr. Allegra provided responses to the document's pre-drafted questions, in the form of check marks, which indicated that Plaintiff was limited to the following work-related tasks during the course of an eight-hour workday: standing and/or walking for a total of less than two hours; sitting for a total of less than six hours; and lifting and/or carrying more than five pounds, but less than ten pounds, for a total of two hours and twenty minutes. A.R. 325-26. Dr. Allegra, in addition, checked answers which indicated that certain limitations would "interfere with [Plaintiff's] ability to perform" work-related tasks, including: frequent breaks of 15 minutes or more during the workday; pain which prevents her from working for eight hours; medications that interfere with her ability to function in the work setting; difficulty concentrating, as she would be off task for more than 10% of the workday; and an average of three or more sick days per month. A.R. 326. Although the form concluded with a question that asked "[p]lease indicate the diagnostic and clinical findings that support your opinion," Dr. Allegra failed to provide an explanation in connection with Plaintiff's alleged inability to perform sedentary work. A.R. 326. Indeed, Dr. Allegra crossed out a section intended for her response.

*c.      Dr. Jortner*

Progress notes from Barbara Jortner, Psy.D. ("Dr. Jortner"), indicate that she treated Plaintiff for psychological ailments in 2016 and 2017. A.R. 472, 480-88, 494-99. During her initial intake assessment in March of 2016, Plaintiff complained of anxiety, depression, obsessive compulsive disorder, and reported that it was difficult to leave her home because of her arthritis and health problems. A.R. 495. Plaintiff also underwent a mental status exam which demonstrated the following results: she was cooperative and appeared neat; she was oriented in all three spheres; her motor functioning and speech were normal; her affect was full; she denied suicidal and homicidal ideation; she did not exhibit any perceptual abnormalities; she was estimated to have average intelligence; and her judgment and insight were intact; however, her mood was depressed and anxious; her thought process was circumstantial at times, her thought content was obsessive and compulsive; her concentration and recent memory were impaired; and her attention varied. A.R. 496-99. Dr. Jortner concluded her assessment by diagnosing Plaintiff with the following psychological impairments: panic disorder, social anxiety, and major depressive disorder. A.R. 499.

Dr. Jortner's progress notes from March through June of 2016, and March through February of 2017, demonstrate that Plaintiff reported various psychological symptoms and stressors. A.R. 473-75, 480-88. Those documents also provide a summary of the clinical procedures that Plaintiff underwent, and a one-to two-sentence "special note" from Dr. Allegra, including a note from April of 2016 indicating that Plaintiff was traveling to Punta Cana for a wedding. A.R. 480-88. Plaintiff's final appointment with Dr. Jortner occurred in March of 2017, during which treatment notes indicate that Plaintiff provided Dr. Allegra with paperwork from her "SSD lawyer." A.R. 473.

On March 9, 2017, Dr. Jortner completed a form from Plaintiff's counsel, titled "Medical Assessment of Ability To Do Work-Related Activities (Mental)," wherein she opined that Plaintiff is "unable to meet competitive standards" in performing certain work-related tasks, including using judgment and maintaining personal appearance. A.R. 469-72. Moreover, according to Dr. Jortner, Plaintiff lacked the "useful ability to function" in the following areas: abiding with work rules; relating to co-workers; dealing with the public; interacting with supervisors; dealing with work stresses; functioning independently; maintaining attention and concentration; complete detailed, non-complex, and simple job instructions; behaving in an emotionally stable matter; relating predictably in social situations; and demonstrating reliability. A.R. 469-72.

### d. State Agency Consultants

On March 25, 2015, at the request of the administration, Dr. Mariam Rubbani performed a physical examination upon Plaintiff. Dr. Rubbani observed that Plaintiff was well developed, well nourished, obese, in no apparent distress, and followed directions. Moreover, upon examination, she reported the following findings:

> Shoulder ranging was limited in all planes tested and she has bilateral positive Neer impingement signs. Elbow ranging was full bilaterally. Wrist ranging was full. There is no atrophy in her hands. She does have ulnar deviated digits in her hands bilaterally Grip and pinch strength are decreased to 3/5. She is able to separate papers. She can make a fist and oppose fingers and fully extend her hands, but these are painful. There is no erythema in the hands and there is some mild edema. Knee ranging is full bilaterally with some edema about the joint. No medial or lateral joint line tenderness. No crepitus. No erythema . . . . Hip ranging is limited in forward flexion. The remainder of planes range of motion are full. Ankle ranging is full bilaterally.

A.R. 304. Dr. Rubbani also indicated that Plaintiff's "straight leg raising is negative bilaterally. Squats less than halfway down. She is unsteady walking on her heels and on her toes. There is no sensory loss in bilateral upper or lower extremity dermatomes. There is no reflex loss in bilateral biceps, triceps, or patellar tendon." Finally, in concluding her physical assessment, Dr. Rubbani

determined that Plaintiff's condition was consistent with rheumatoid arthritis and lumbar myofascial spasm.

On April 8, 2015, State agency medical consultant Mary McLarnon, M.D. ("Dr. McLarnon"), independently examined Plaintiff's medical records, and rendered an opinion as to Plaintiff's exertional limitations. A.R. 71-74. More specifically, Dr. McLarnon noted that Plaintiff could occasionally lift and/or carry up to 20 pounds, frequently lift and/or carry up to 10 pounds, stand and/or walk (with normal breaks) for a total of approximately 4 hours in an 8-hour workday, and sit (with normal breaks) for a total of approximately 6 hours in an 8-hour workday, and can push and/or pull objects. Furthermore, Dr. McLarnon indicated that Plaintiff could occasionally crawl, and climb ropes, ladders, and scaffolds; and she could frequently climb ramps/stairs, stoop, kneel, and crouch without any difficulty balancing. A.R. 72. According to Dr. McLarnon, her findings were consistent with a light/sedentary residual functional capacity assessment. A.R. 70.

**B.     Review of the Testimonial Record**

*a.     Third Party Function Report*

On February 6, 2016, Deana Alles ("Ms. Alles"), Plaintiff's mother, completed a Third Party Function Report, wherein she provided information in connection with her daughter's daily activities and exertional abilities. A.R. 170-77. More specifically, according to Ms. Alles, Plaintiff's pain and discomfort cause her difficulty falling sleep, but during the course of the day, she attends the gym, in some degree, in order to alleviate joint stiffness, reads, and watches television. A.R. 170. Moreover, prior to her alleged disability, Ms. Alles indicated that her daughter was capable of attending school and related functions, socializing with friends, and was generally more independent. A.R. 171.

As to her ability to provide personal care, Ms. Alles opined that her daughter "sometimes" has difficulty dressing, styling her hair, and shaving. A.R. 171. Ms. Alles indicated that her daughter relies on a "shower chain" to bathe, requires reminders to take her medication, and is unable to open childproof bottles. A.R. 171. However, Ms. Alles stated that her daughter was capable of feeding herself and using the bathroom without the need for assistance. A.R. 171.

As to her ability to perform house and yard work, Ms. Alles stated that her daughter's "extreme inflammation, pain, and fatigue" precludes her from performing such tasks, including chores. A.R. 172-73. However, Ms. Alles indicated that her daughter was able to "go outside" two to three times a week, for short periods of time, and possessed the ability to drive herself and shop "in stores" for at least thirty to sixty minutes, as well as by phone, email, and computer. A.R. 173.

As to her hobbies and interests, Ms. Alles stated that her daughter enjoys reading, journalism, watching television, playing board games, and baking. A.R. 174. Moreover, according to Ms. Alles, her daughter began "reading and journalism" after her JRA became "more severe." A.R. 174. As to Plaintiff's social activities, Ms. Alles indicated that her daughter talks and visits "her friends and family" on a weekly basis, and regularly goes to her aunt's house and Barnes & Nobles. A.R. 174. However, Ms. Alles opined that "big groups of people" cause her daughter to feel anxious. A.R. 175.

As to her exertional and mental limitations, Ms. Alles stated that her daughter's condition impedes her ability to ambulate, as she cannot walk for more than two blocks without requiring a fifteen to twenty minute break. A.R. 175. Moreover, according to Ms. Alles, her daughter can follow written instructions "well," but spoken instructions are required "to be repeated more than once." A.R. 175. In addition, Ms. Alles indicated that her daughter's social anxiety precludes her from getting along with authoritative figures, and her daughter cannot handle stress or changes in

her environment, because she immediately becomes upset, irritated, or experiences a panic attack. A.R. 176.

b.     *Plaintiff's Testimony*

On March 30, 2017, Plaintiff appeared at a hearing before the ALJ, during which she testified about various matters, including her medical impairments and symptoms. A.R. 26-36. More specifically, Plaintiff testified that she was 21 years old, completed high school, and suffered from the following physical and mental ailments: rheumatoid arthritis, fibromyalgia, herniated disks, and social anxiety. A.R. 31, 36. As a result of these conditions, Plaintiff stated that she has difficulty getting out of bed in the morning, walking, sitting, and extending her hands. Plaintiff also indicated that she feels nervous leaving her home and talking to people, and she experiences a "constant" pain in the thoracic region of her back. A.R. 31-36. Plaintiff, in addition, testified that she watches television during the day, and she last drove "two or three" weeks prior to her hearing. A.R. 38.

c.     *Testimony of the Vocational Expert*

A Vocational Expert ("VE") testified at the hearing. The VE was provided with eight hypothetical questions by the ALJ. A.R. 41-46. The ALJ first posited the following:

> [A]ssume an individual of this Claimant's age, education, and work history. . . . [A]ssume the individual is restricted to jobs that are of a simple and repetitive nature as a result of her inability to concentrate and focus secondary to anxiety and/or pain. Also please assume the individual is restricted to jobs that do not involve contact with the public and minimal contact with coworkers and supervisors. Assume additionally that the individual is restricted to jobs that do not require continual and repetitive fine fingering and manipulation. With those limitations, would there be jobs for such a person?

A.R. 42. The VE responded that "[j]obs would exist" for a hypothetical individual with such limitations, including the following positions: (a) Ticket Tagger, DOT # 652.685-094; (b) Inspector and Packager, DOT # 559.687-074; and (c) Mail Clerk DOT # 209.687-026. A.R. 42.

The VE testified that, in the aggregate, these jobs exist in excess of 240,000 in the national economy. A.R. 42.

The ALJ's second hypothetical was: "[i]f I were to add an additional limitation that the individual would be restricted to jobs that did not involve working at heights or around heavy machinery, would that change your answer for th[e previous] hypothetical?" A.R. 43. The VE answered in the negative. A.R. 43.

The ALJ's third hypothetical was: [p]lease assume the same limitations as noted in the previous hypothetical. However, this time assume the individual would be restricted to jobs that require occasional but not frequent fine fingering and manipulation. With that, this limitation, would there be jobs for such a person?" A.R. 43. The VE responded that such an individual would not be able to perform any jobs. A.R. 43.

The ALJ's fourth hypothetical was:

> [P]lease assume the same individual of age, education and work history. Assume this time, the individual is restricted to sedentary work. Assume also the individual would be restricted to jobs that are of a simple and repetitive nature for the reasons previously stated. Assume also the individual would be restricted to jobs where there is no contact with the public and minimal contact with supervisors with coworkers and supervisors, and assume the individual would be restricted to jobs that do not involve working at heights or around heaving machinery. Added to that, please assume the individual would be restricted to jobs that do no require continual and repetitive fine fingering, in other words, frequent but not continual and repetitive. With those limitations, would there be jobs for such a person?

A.R. 43. The VE provided that such an individual would be able to work in the following positions: (a) Assembler, DOT # 739.687-066; (b) Preparer, DOT # 700.687-062; and (c) Table Worker, DOT # 739.687-182. A.R. 44. The VE testified that, in the aggregate, these jobs exist in excess of 270,000 in the national economy. A.R. 44.

The ALJ's fifth hypothetical was: "[p]lease assume again the same individual. However, assume this time, the individual would be restricted to jobs that allow for frequent but not—

occasional but not frequent fine fingering and manipulation. With that additional limitation, would there be jobs for such a person?" A.R. 44. The VE answered that question in the affirmative and indicated that such jobs would include the following positions: Weight Tester, DOT # 539.485-010 and Carding Machine Operator DOT # 681.685-030. A.R. 44. The VE testified that, in the aggregate, these jobs exist in excess of 60,000 in the national economy. A.R. 44.

The ALJ's sixth hypothetical was: "[p]lease assume the same limitations as noted in the previous question. However, assume this time the individual would have no, no fine fingering with the gross manipulation. With those limitations, would there be jobs for such a person?" A.R. 44. The VE responded in the negative. A.R. 45.

The ALJ's seven hypothetical was: "[i]f I were to give you any combination of limitations at any exertional level, if they were to include a limitation that the individual would be off task from performing even jobs that are of a simple and repetitive nature for up to 15 percent of the workday for the reasons previously stated, would there be jobs for such a person?" A.R. 45. The ALJ responded that such an individual would not be able to perform any jobs with such limitations. A.R. 45.

Finally, the ALJ posited as follows: "[i]f I were to give you any combination of limitations at any exertional level that would include a limitation that the individual would be unable to go to work three or more days per month for any medical reason, would there be jobs for such a person?" A.R. 45. The VE stated "jobs would not exist with absences of that frequency." A.R. 45.

### C.    ALJ's Findings

On May 3, 2014, following the hearing, the ALJ issued a written decision, in which he applied the standard five-step process to determine if Plaintiff had satisfied her burden of establishing disability. A.R. 12-21.

First, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 1, 2010, the alleged onset date. A.R. 12.

Second, the ALJ found that Plaintiff had the following severe impairments: "rheumatoid arthritis, depression and anxiety." A.R. 14-15. In addition to these severe impairments, the ALJ found that Plaintiff had the following non-severe physical impairment: "fibromyalgia." A.R. 14. The ALJ reasoned that there is "no documentation that other disorders that cause symptoms similar to fibromyalgia have been ruled out[,]" and the medical records do not "support a finding that she suffers from widespread pain throughout all quadrants of the body. Rather, the claimant's primary pain complaints appear to be isolated to her . . . right knee, wrist and hands." A.R. 14. Therefore, in accordance with SSR 12-2p, Plaintiff's fibromyalgia was classified as a non-severe impairment. A.R. 14.

Third, the ALJ found that Plaintiff does not have an impairment, or a combination of impairments, that meets or medically equals the severity of one of the listed impairments under the Act that would qualify for disability benefits. A.R. 15-16. Specifically, in this step, the ALJ considered Plaintiff's medical impairments under listings 14.09 and 12.06. A.R. 15. In that connection, the ALJ concluded that the medical record failed to show any of the required criteria under Listing 14.09. Moreover, the ALJ determined that Plaintiff's mental impairments did not meet or satisfy Listing 12.06, because Plaintiff did not exhibit "at least two 'marked' limitations or one 'extreme' limitation, as is required under the "paragraph B" criteria. A.R. 16. The ALJ also considered and determined that Listing 12.06's "paragraph C" criteria were not satisfied. A.R. 16.

Fourth, the ALJ found that Plaintiff had the residual functional capacity to perform sedentary work as defined in  20 C.F.R §§ 404.1567(a) and 416.967(a), and further clarified that Plaintiff:

has the residual functional capacity to perform sedentary work . . . except with occasionally and not frequent fine fingering and jobs that do not involve working around heights or heavy machinery. In addition, she is limited to work that is simple and repetitive, requires no contact with the public and minimal contact with co-workers and supervisors.

A.R. 16. In reaching this RFC determination, the ALJ considered Plaintiff's statements concerning her own limitations, relevant medical evidence concerning both her alleged physical and mental impairments, and medical source opinion evidence. A.R. 16-20.

The ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of such symptoms were not entirely credible, since they could not be corroborated by the relevant objective medical evidence. A.R. 17.

The ALJ, however, assigned significant weight to the opinion of State agency medical consultant Miriam Rubbani, M.D. ("Dr. Rubbani"), who performed a neurologic exam upon Plaintiff and rendered a consultative examination medical report that indicated that Plaintiff's symptoms were consistent with having rheumatoid arthritis and lumbar myofascial spasm. A.R. 18.

The ALJ discredited the findings of Dr. Allegra, who completed a form from Plaintiff's counsel, which indicated that Plaintiff is unable to perform sedentary work. A.R. 19. In assigning little weight to Dr. Allegra's opinion, the ALJ noted that Dr. Allegra's own treatment notes "do not confirm any significant abnormalities[,]" but, instead, primarily summarize Plaintiff's subjective complaints, diagnosis, and treatment. A.R. 19. The ALJ, in that same vein, found that Dr. Allegra's progress notes were devoid of any "laboratory diagnostic findings to show that the claimant is totally disabled." A.R. 19.

The ALJ also discredited the opinions of Dr. Jortner, who completed "a Mental Medical Assessment of Ability to Do Work Related Activities" at the request of Plaintiff's counsel. Indeed,

the doctor opined that Plaintiff has no useful ability to perform various work-related tasks. A.R. 19. In assigning little weight to Dr. Jortner's assessments, the ALJ determined that his opinions were unsupported by his "own objective findings or the other evidence of record." A.R. 19. In that connection, the ALJ reasoned that there is "virtually no objective indicia of a significant mental impairment" which renders Plaintiff unable to perform as follows—simple and repetitive work with no contact with the public and limited contact with coworkers and supervisors. A.R. 19.

Finally, the ALJ accorded little weight to a Third Party Function Report which Ms. Alles, Plaintiff's mother, completed. A.R. 20. In discrediting her statements, the ALJ indicated that Ms. Alles is not medically trained, nor is she a disinterested third party by virtue of her relationship as Plaintiff's mother. A.R. 20. Moreover, the ALJ determined that Ms. Alles' answers were inconsistent with the "preponderance of the opinions and observations by medical doctors in this case." A.R. 20.

Fifth, the ALJ found that, taking into consideration Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform. A.R. 21. In reaching this determination, the ALJ relied on the testimony of a vocational expert that an individual with Plaintiff's age, education, past relevant work experience, and residual functional capacity could perform the following representative occupations: Preparer, DOT # 700.687-062; Weight Tester, DOT # 539.485-010; and Carding Machine Operator, DOT # 681.685-030, which the vocational expert testified existed in the national economy in the amounts of 80,000, 50,000, and 100,000, respectively. A.R. 21.

Accordingly, the ALJ concluded that "the claimant has not been under a disability, as defined in the Social Security Act, from January 1, 2010, through the date of this decision." A.R. 21.

## II.    STANDARD OF REVIEW

On a review of a final decision of the Commissioner of the Social Security Administration, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); *see Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001). The Commissioner's decisions regarding questions of fact are deemed conclusive on a reviewing court if supported by "substantial evidence in the record." 42 U.S.C. § 405(g); *see Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). While the court must examine the record in its entirety for purposes of determining whether the Commissioner's findings are supported by substantial evidence, *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978), the standard is highly deferential. *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004). Indeed, "substantial evidence" is defined as "more than a mere scintilla," but less than a preponderance. *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004). "It means such relevant evidence as a reasonable mind might accept as adequate." *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999). A reviewing court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992), *cert. denied*, 507 U.S. 924 (1993). Accordingly, even if there is contrary evidence in the record that would justify the opposite conclusion, the Commissioner's decision will be upheld if it is supported by the evidence. *See Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986).

Disability insurance benefits may not be paid under the Act unless Plaintiff first meets the statutory insured status requirements. *See* 42 U.S.C. § 423(c). Plaintiff must also demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can

be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A); *see Plummer*, 186 F.3d at 427. An individual is not disabled unless "his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). Eligibility for supplemental security income requires the same showing of disability. *Id.* at § 1382c (a)(3)(A)-(B).

The Act establishes a five-step sequential process for evaluation by the ALJ to determine whether an individual is disabled. *See* 20 C.F.R. § 404.1520. First, the ALJ determines whether the claimant has shown that he or she is not currently engaged in "substantial gainful activity." *Id.* at § 404.1520(a); *see Bowen v. Yuckert*, 482 U.S. 137, 146-47 n.5 (1987). If a claimant is presently engaged in any form of substantial gainful activity, he or she is automatically denied disability benefits. *See* 20 C.F.R. § 404.1520(b); *see also Bowen*, 482 U.S. at 140. Second, the ALJ determines whether the claimant has demonstrated a "severe impairment" or "combination of impairments" that significantly limits his physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c); *see Bowen*, 482 U.S. at 146-47 n.5. Basic work activities are defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b). These activities include physical functions such as "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling." *Id.* A claimant who does not have a severe impairment is not considered disabled. *Id.* at § 404.1520(c); *see Plummer*, 186 F.3d at 428.

Third, if the impairment is found to be severe, the ALJ then determines whether the impairment meets or is equal to the impairments listed in 20 C.F.R. Pt. 404, Subpt. P., App. 1 (the "Impairment List"). 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant demonstrates that his or her

impairments are equal in severity to, or meet those on the Impairment List, the claimant has satisfied his or her burden of proof and is automatically entitled to benefits. *See id.* at § 404.1520(d); *see also Bowen*, 482 U.S. at 146-47 n.5. If the specific impairment is not listed, the ALJ will consider in his or her decision the impairment that most closely satisfies those listed for purposes of deciding whether the impairment is medically equivalent. *See* 20 C.F.R. § 404.1526(a). If there is more than one impairment, the ALJ then must consider whether the combination of impairments is equal to any listed impairment. *Id.* An impairment or combination of impairments is basically equivalent to a listed impairment if there are medical findings equal in severity to all the criteria for the one most similar. *Williams*, 970 F.2d at 1186.

If the claimant is not conclusively disabled under the criteria set forth in the Impairment List, step three is not satisfied, and the claimant must prove at step four whether he or she retains the "residual functional capacity" ("RFC") to perform his or her past relevant work. 20 C.F.R. § 404.1520(e); *Bowen*, 482 U.S. at 141. If the claimant is able to perform previous work, the claimant is determined to not be disabled. 20 C.F.R. §§ 404.1520(e), 416.920(e); *Bowen*, 482 U.S. at 141-42. The claimant bears the burden of demonstrating an inability to return to the past relevant work. *Plummer*, 186 F.3d at 428. Finally, if it is determined that the claimant is no longer able to perform his or her previous work, the burden of production then shifts to the Commissioner to show, at step five, that the "claimant is able to perform work available in the national economy." *Bowen*, 482 U.S. at 146-47 n.5; *Plummer*, 186 F.3d at 428. This step requires the ALJ to consider the claimant's residual functional capacity, age, education, and past work experience. 20 C.F.R. § 404.1520(f). The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether the claimant is capable of performing work and not disabled. *Id.*

### III. PLAINTIFF'S CLAIMS ON APPEAL

Plaintiff advances four arguments on appeal as to why the ALJ's disability determinations were unsupported by substantial credible evidence. First, Plaintiff argues that the ALJ failed to classify her fibromyalgia as a severe impairment. Second, Plaintiff argues that the ALJ did not properly evaluate the medical opinions of Dr. Allegra and Dr. Jortner, her treating physician and psychologist, respectively. Third, Plaintiff argues that the ALJ erred by finding that she did not have an impairment that met or medically equaled a listing, including Listing 14.09, 12.04, and 12.06. Fourth, Plaintiff argues the ALJ failed to adequately develop the record. The Court will address each argument in turn.

### A.    Plaintiff's Fibromyalgia

According to Plaintiff, the ALJ erred at step two of the 20 C.F.R. § 404.1520 analysis, because he failed to determine that her fibromyalgia was a severe impairment. Step two of the five-step disability evaluation process serves as a threshold test to determine whether a claimant has any "severe impairment" or "combination of impairments" that significantly limits his physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c); *see Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 546 (3d Cir. 2003) ("[t]he step-two inquiry is a *de minimis* screening device to dispose of groundless claims").

Here, the ALJ expressly addressed Plaintiff's fibromyalgia at step two of the analysis. According to SSR 12-2p, fibromyalgia is a medically determinable impairment if there is evidence which excludes other disorders which may cause similar symptoms, and the claimant suffers from: (a) a history of widespread pain that has persisted for at least three months; and (b) at least 11 tender points on physical examination in areas above and below the waist. SSR 12-2P, 2012 SSR LEXIS 1, at *5-8 (S.S.A. July 25, 2012). In that connection, although Plaintiff suffered from at

least 11 positive tender points, the ALJ determined that she failed to satisfy the remaining criteria under SSR 12-2p, such as widespread pain throughout her body, and the medical record failed to include documentation which excluded "other disorders that cause similar symptoms to fibromyalgia." A.R. 14.

The ALJ's conclusions with respect to the non-severity of Plaintiff's fibromyalgia are supported by substantial evidence, because the medical record demonstrates that Plaintiff's diagnosis also included rheumatoid arthritis, which can cause similar symptoms to fibromyalgia. *See Siggelow v. Colvin*, No. 15-1308, 2016 U.S. Dist. LEXIS 27069, at *3 (M.D. Pa. Mar. 3, 2016) (noting that "fibromyalgia is often considered an arthritis-like condition" and "[l]ike arthritis, . . . [it] can cause significant pain and fatigue, and it can interfere with a person's ability to carry on daily activities."). Indeed, Plaintiff does not dispute that the record is devoid of any objective medical evidence to support that her symptoms are only caused by fibromyalgia. In the absence of such medical information, the ALJ did not error by classifying Plaintiff's fibromyalgia as a non-severe impairment.[2]

### B. Opinion Evidence

Next, Plaintiff contends that the ALJ failed to properly weigh the opinions of Dr. Allegra and Dr. Jortner, Plaintiff's treating physician and psychologist, both of whom concluded that Plaintiff was incapable of performing sedentary work. Plaintiff's Brief ("Pl.'s Brief"), at 18-26.

---

[2]     In a conclusory fashion, Plaintiff also argues that the ALJ erred by failing to consider whether Plaintiff's fibromyalgia met or equaled a listing. However, Plaintiff's contentions are without merit; indeed, SSR 12-2p explains that fibromyalgia "cannot meet a listing . . . because it is not a listed impairment," and, instead, the ALJ "must determine whether [fibromyalgia] medically equals a listing (for example, listing 14.09D in the listing for inflammatory arthritis.)[.]" SSR 12-2p. Here, the ALJ explicitly considered Listing 14.09 and determined that Plaintiff's physical impairments did not satisfy its criteria. *See infra*. Accordingly, the ALJ complied with his obligation under SSR 12-2p.

Under 20 C.F.R. § 404.1527(c)(2), a treating source's opinion will be given controlling weight if the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." Several factors may also be used to determine the weight given to a medical opinion including: length of treatment relationship, the nature and extent of the treatment relationship, supportability by medical evidence, and consistency with the record as a whole. *Id*. If a treating source's opinion conflicts with that of a non-treating source, "the ALJ may choose whom to credit but cannot reject evidence for no reason or for the wrong reasons." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000). That is, the ALJ must rely only on "contradictory medical evidence" in rejecting the treating source's opinion, rather than "credibility judgments, speculation or lay opinion." *Id*. An ALJ is required to provide "an explanation of the reasoning behind [his] conclusions," including "reason(s) for discounting rejected evidence." *Fargnoli v. Halter*, 247 F.3d 34, 43 (3d Cir. 2001).[3]

  *a.*   *Dr. Allegra*

With respect to Dr. Allegra, Plaintiff argues that the ALJ improperly discredited her functional assessment report, as provided in a two-page form from Plaintiff's counsel titled "Seelig law Offices, LLC Treating Doctor's Patient Functional Assessment To Do Sedentary Work." A.R. 325. More specifically, that document contained pre-drafted questions, and Dr. Allegra's responses, provided in the form of check marks, indicated that Plaintiff suffered from the following

---

[3]   Plaintiff also argues that the ALJ improperly weighed the opinion of State agency consultant Dr. Rubbani, because he relied on his own lay opinion to determine that her findings were "no worse than a sedentary residual functional capacity[.]" A.R. 18. While the Court finds Plaintiff's position without merit, any error, in this regard, is harmless. Indeed, in determining that Plaintiff was capable of performing sedentary work, the ALJ also relied on the medical findings of State agency consultant Dr. McLarnon, whose assessments were consistent with a sedentary residual functional capacity. Therefore, the ALJ's evaluation of Dr. Rubbani's determinations is based on substantial evidence, as it was not the only medical opinion which formed the basis of his RFC formulation.

physical limitations: standing and/or walking for a total of less than two hours; sitting for a total of less than six hours; and lifting and/or carrying more than five pounds, but less than ten pounds, for a total of two hours and twenty minutes. A.R. 325-26. Dr. Allegra checked answers which additionally indicated the following limitations "interfere[d] with [Plaintiff's] ability to perform" work-related tasks: frequent breaks of 15 minutes or more during the workday; pain which prevents her from working for eight hours; medications that interfere with her ability to function in the work setting; difficulty concentrating, as she would be off task for more than 10% of the workday; and an average of three or more sick days per month. A.R. 326.

Here, the ALJ properly discredited Dr. Allegra's medical findings. Indeed, the ALJ specifically considered Dr. Allegra's functional assessment, and determined that she failed to adequately support her own conclusions, and her opinion was in conflict with objective medical evidence—findings which are grounded in substantial evidence. A.R. 19. Indeed, the disputed report concluded with a question that asked "[p]lease indicate the diagnostic and clinical findings that support your opinion," but Dr. Allegra crossed out the space which followed and offered no explanation whatsoever in connection with her conclusions. A.R. 326. Nor did she reference any objective clinical and laboratory diagnostic findings, such that the ALJ was required to accord her physical functionality assessment significant weight. *See, e.g., Colvin v. Comm'r Soc. Sec.*, 675 Fed. Appx. 154, 157 (3d Cir. 2017) (holding that the district court properly discredited the opinion of the plaintiff's treating physician, because the "permanent disability diagnosis was set forth in a checkbox form unaccompanied by any explanation[.]"); *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993) ("Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best.").

More importantly, in addition to these deficiencies, the ALJ referenced the findings of Dr. McLarnon, State agency medical consultant, upon which he relied in discrediting Dr. Allegra's medical opinion. Notably, Dr. McLarnon's opinion with respect to Plaintiff's exertional limitations were consistent with the ALJ's RFC formulation, as the doctor indicated a light/sedentary residual functional capacity assessment. A.R. 71-74. Accordingly, the Court finds that the ALJ did not error in his assessment of Dr. Allegra's medical opinion, as he specifically identified contradicting medical evidence. *Craig v. Comm'r of Soc. Sec.*, No. 13-4454, 2014 U.S. Dist. LEXIS 164064, at *30 (D.N.J. Nov. 21, 2014) ("If, however, a treating physician's opinion is contradicted by other medical evidence in the record, including the opinion of a non-treating physician, the ALJ may accept the most credible medical opinion.") (citing *Plummer*, 186 F.3d at 429); *Schmits v. Astrue*, No. 08-1971, 2009 U.S. Dist. LEXIS 48182, at *23 (D.N.J. June 9, 2009) ("Furthermore, given the well-delineated contradictory medical evidence identified by the ALJ in her opinion, the Court finds that the ALJ was entitled to accept the most credible medical opinion, even if provided by . . . a non-treating physician").

b. *Dr. Jortner*

In addition, Plaintiff argues that the ALJ inappropriately discredited the medical opinion of her psychologist, Dr. Jortner, who diagnosed Plaintiff with panic disorder, social anxiety, and major depressive disorder in 2016. A.R. 499. As noted earlier, Dr. Jortner completed a form given by Plaintiff's counsel, titled "Medical Assessment of Ability To Do Work-Related Activities (Mental)," wherein she opined that Plaintiff is "unable to meet competitive standards" in performing certain work-related tasks, including using judgment and maintaining personal appearance. A.R. 469-72. Dr. Jortner also determined that Plaintiff lacked the "useful ability to function" with respect to the following: abiding with work rules; relating to co-workers; dealing

with the public; interacting with supervisors; dealing with work stresses; functioning independently; maintaining attention and concentration; completing detailed, non-complex, and simple job instructions; behaving in an emotionally stable matter; relating predictably in social situations; and demonstrating reliability. A.R. 469-72.

Here, while the Court acknowledges that Dr. Jortner assessed a significant amount of limitations, the ALJ, nevertheless, failed to provide an adequate explanation to support the rejection of her medical opinion. Dr. Jortner was the only psychologist who treated or assessed Plaintiff on numerous occasions during the relevant time period, and she rendered a determination with respect to Plaintiff's psychological limitations. Indeed, aside from the evaluation form, Plaintiff provided various treatment notes from Dr. Jortner. *Schmits*, No. 08-1971, 2009 U.S. Dist. LEXIS 48182, at *21 ("The opinions of treating physicians are entitled to 'substantial and at times even controlling weight' because of the 'detailed picture' and 'unique perspective' that they can provide.") (citing *Yensick v. Barnhart*, 245 Fed. Appx. 176, at 181 (3d Cir. 2007)). As the treating psychologist, the ALJ, in discrediting Dr. Jortner's medical opinion, did not state that the opinion was unsupported by medically acceptable clinical and laboratory diagnostic techniques, nor did he provide an explanation of what those standards are, in order for the Court to conduct a meaningful judicial review. Rather, in a conclusory fashion, the ALJ stated that Dr. Jortner's determinations were unsubstantiated by her own "objective findings or the other evidence of record," without specifically identifying or referencing a medical document, progress note, or doctor's report. A.R. 19. The ALJ's explanation, in this regard, did not comply with the pertinent social security regulations.[4]

---

[4]     Although the ALJ indicated that, during the hearing, Plaintiff stated that "she was capable of much greater exertional activity than described by" Dr. Jornter, the Court did not find such a

Moreover, while the ALJ concluded that "there are virtually no objective indicia of a significant mental impairment" to preclude Plaintiff from following simple and basic work instructions, this failed to provide an adequate basis to discredit Dr. Jortner's findings. Indeed, the medical opinion of a treating physician cannot outright be rejected, unless the ALJ specifically relied on "contradictory medical evidence." *Plummer*, 186 F.3d at 429; *Baker v. Colvin*, No. 12-7251, 2014 U.S. Dist. LEXIS 80683, at *17 (D.N.J. June 13, 2014) ("[I]f an ALJ rejects the opinion of a treating physician without pointing to contrary medical opinions, and instead conducts his own lay analysis to make an RFC determination, that determination is not supported by substantial evidence"). Notwithstanding that obligation, the ALJ failed to identify objective medical evidence that conflicted with Dr. Jortner's findings. Indeed, although the ALJ relied upon the "medical opinions of the State Agency medical/psychologist consultants," both of whom opined that Plaintiff possessed the mental capacity to perform "basic work activities," those determinations also do not provide an adequate basis to discredit Dr. Jortner's medical findings. The State agency doctors rendered their opinions in 2015, in connection with Plaintiff's medical record which did not include Dr. Jortner's medical notes or her diagnosis of panic disorder, social anxiety, and major depressive disorder. A.R. 499. Indeed, there were no clinical diagnosis of Plaintiff's mental impairments whatsoever, and it is unclear whether those agency doctors were trained to assess mental impairments. In fact, the doctors' assessments were primarily in relation to Plaintiff's physical impairments. Accordingly, because the medical opinions of the state agency doctors did not account for Plaintiff's treatment with Dr. Jortner, the ALJ was required to rely upon other objective medical evidence in order to discredit Dr. Jortner's findings. Having failed to do so, the

---

concession upon review of the record. Nevertheless, even if Plaintiff admitted as such, her opinion with respect to her "exertional activity" does not speak to her alleged psychological limitations.

24

Court finds that the ALJ did not properly evaluate the medical opinion of Dr. Jortner with respect to Plaintiff's psychological limitations, and, in that connection, failed to provide a proper medical basis in finding that Plaintiff was capable of performing simple and repetitive tasks as a result of Plaintiff's mental impairments. Indeed, any determination in that regard was improperly founded upon the ALJ's own judgment. *See, e.g., Bell v. Colvin*, No. 12-00634, 2013 U.S. Dist. LEXIS 180062, at *35 (M.D. Pa. 2013) (finding that the ALJ erred because he rejected the opinion of the plaintiff's treating psychologist, without "giving an adequate explanation for doing so or point[ing] to and explicitly rely[ing] on any medical evidence which contradicted [the treating psychologist's opinion.]").[5] To be clear, while the ALJ, upon remand, may ultimately reject the evaluation of Dr. Jortner's medical findings, he must articulate his reasoning with sufficient particularity, and discredit her findings by specifically identifying contradicting medical evidence.

## C.     LISTED IMPAIRMENTS

Finally, Plaintiff argues that the ALJ committed error, because he failed to conclude that her physical and psychological impairments met or equaled Listings 14.09, which is applicable to rheumatoid arthritis, and Listings 12.04 and 12.06, which are applicable to depressive and anxiety disorders, respectively. Here, because the Court has determined that the ALJ did not properly discount Dr. Jortner's medical opinion with respect to Plaintiff's alleged psychological limitations,

---

[5]     Plaintiff also challenges the ALJ's assessment of a Third Party Function Report, submitted by Plaintiff's mother. I find that the ALJ appropriately discredited Ms. Alles's lay opinion on the basis of her relationship with Plaintiff. As the ALJ noted, Ms. Alles was not medically trained, and her opinions conflicted with the objective medical evidence, including the medical findings of the State agency consultants. Accordingly, the ALJ provided an adequate basis to reject Ms. Alles's lay opinion. SSR 06-3p ("In considering evidence from 'non-medical sources' who have not seen the individual in a professional capacity in connection with their impairments, such as spouses, parents, friends, and neighbors, it would be appropriate to consider such factors as the nature and extent of the relationship, whether the evidence is consistent with other evidence, and any other factors that tend to support or refute the evidence.").

he must also reassess whether Plaintiff satisfies the criteria of Listings 12.04 and 12.06 on remand. To the extent that an additional consultative examination is required in order to properly evaluate Plaintiff's psychological limitations, the ALJ may exercise his discretion and further develop the record. However, the ALJ need not reconsider Listing 14.09 in connection with Plaintiff's rheumatoid arthritis, as he explicitly referenced and determined that "the record fails to show any of the required criteria" under that Listing. Indeed, the Court has already found that the ALJ's assessment of Plaintiff's physical impairments is based on substantial evidence.[6]

## IV.    CONCLUSION

For the reasons set forth above, remand is appropriate on the limited basis of assessing Plaintiff's mental impairments.


/s/ Freda L. Wolfson
Freda L. Wolfson
United States District Judge

---

[6]    Plaintiff also argues that the ALJ erred by failing to develop the record with respect to her fibromyalgia. However, the Court finds that the medical evidence as to Plaintiff's physical condition is already sufficiently developed, such that the ALJ need not elicit any further evidence in that context.